EWING *v.* ATLANTIC AVE. R. CO.

(*City Court of Brooklyn, General Term.* November 24, 1890.)

HORSE AND STREET RAILROADS—INJURIES TO TRAVELERS.

     In an action for personal injuries alleged to have been sustained through the negligence of the driver of defendant's horse-car, plaintiff admitted that she saw the car approaching as she stepped from the curb to cross the street, but gave no further attention to it, and only watched the car approaching in the opposite direction. The uncontradicted testimony of the driver showed that he saw plaintiff as she stepped from the curb, called to her several times, used every possible effort to stop the car, and succeeded in doing so as the horses' heads reached plaintiff. *Held,* that the complaint was properly dismissed.

Appeal from trial term.

Argued before OSBORNE and VAN WYCK, JJ.

*Thomas E. Pearsall,* for appellant.  *Tracy, McFarland, Boardman & Platt,* for respondent.

OSBORNE, J.  Plaintiff brought this action to recover damages for injuries alleged to have been sustained by her through the negligence of one of the drivers of a horse-car of the defendant.  On the trial, the complaint was dismissed after testimony had been put in by both sides, on the ground that there was no proof of negligence on the part of defendant's driver.  Plaintiff appeals from the judgment entered on such dismissal.  Plaintiff's evidence was to the effect that, on December 16, 1889, about half-past 7 in the evening, while on her way to church, she started from the north-easterly corner of Court street and Atlantic avenue, to cross Atlantic avenue.  As she stepped down from the curb to the cross-walk on a brisk walk, she looked to her left, and saw the car, the driver of which was alleged to have been negligent, about five houses, or about 125 feet away from her, and approaching her on the track nearest to her, then she looked to the right, and saw another car coming up from the ferry, and nearer her than the car she first saw.  She kept her eye on the car coming from the ferry, and appears to have ignored the approach of the other car.  She says:  "One of the horses [meaning cars] was down five houses from me, and I had my eye on the other car that was coming up from the ferry.  I was knocked down.  The first thing I knew the horse's head struck me here, and knocked me over on my right side on the walk, or on the track."  She further testified, on her cross-examination, as follows:  "*Question.* Then, you say, the car was about 125 feet away when you first saw it?  *Answer.* When I first saw it.  *Q.* You were then on the curb-stone?  *A.* Yes; I was going off the curb-stone.  *Q.* Then you turned away and looked in the other direction, did you?  *A.* I looked then up towards the ferry, and I see the other car coming from the ferry.  *Q.* Answer my question.  You then turned away, and looked in the other direction, did you?  *A.* No; I went right along, and I see over my right shoulder the other car was coming, and I had my eye on that car that was coming from the ferry.  *Q.* You did not look in the other direction at all then?  *A.* No; I didn't.  *Q.* So that the last time you saw the horses of the car that struck you, you were on the curb-stone, a distance of about eighteen feet from the track?  *A.* Stepping, yes, sir.  *Q.* As nearly as you can fit it?  *A.* Yes, sir.  *Q.* And the car, you think, was about five houses away?  *A.* Five houses away.  *Q.* From you?  *A.* Yes, sir.  *Q.* And then your attention was drawn to the other car?  *A.* Yes, sir.  *Q.* And you walked straight to the track?  *A.* I went right straight along, and the first thing I knew I was struck."  Another witness for the plaintiff, William Menagh, testified that he was on the same corner from which plaintiff started to cross Atlantic avenue, going in an opposite direction towards the city hall.  He was attracted by the driver halloing, when he turned around, and saw the horses approaching, and, about 12 feet from the cross-walk, heard the driver hallo twice; saw the horses knock plaintiff down.  When the car stopped, the dash-board of the car was about 2 feet from the cross-walk.  This was substantially the evidence on the part of the plaintiff, as to the happening of the accident.  On the part of the defendant, the driver testified that he was going at an ordinary gait, on time.  When about three car-lengths from the cross-walk, he saw plaintiff step off the curb-stone.  "I shouted at her, in a loud tone of voice, 'Hey!'  I shouted several times to the lady.  She had her head turned down town, paying no attention to me whatever, therefore I stopped the car, and still shouted.  The track being slippery, I stopped the car with the horses' heads over the first flagging; probably the noses were on the edge of the second flagging, being three flaggings on the cross-walk.  She did not pay no atten-

tion then. She walked deliberately under the horses' heads, and as 'she walked under she fell down." Taking the testimony on the part ·of the plaintiff wherever it conflicts with the driver's evidence as true, and giving credit to so much of the driver's testimony as is uncontradicted, we are at a loss to perceive how the driver can be chargeable with negligence. Plaintiff admits that she saw the car approaching as she stepped down from the curb, but gave no further attention to it, only watching the car approaching in the opposite direction. The driver saw her as she stepped down from the curb, called out to her several times, and used every possible effort to stop his car, and succeeded in doing so as the horses' heads reached plaintiff. What more he could have done to prevent the accident, we are at a loss to suggest. He was vigilant, proceeding at an ordinary gait, had control of his team, and used every effort in his power to warn plaintiff, and to stop his car. In our opinion, there was no evidence in the case on which a jury would have been justified, on the uncontradicted facts, in finding a verdict of negligence against the defendant, and, if so found, it would have been the duty of the trial judge to set it aside. Under such circumstances, the complaint, we think, was properly dismissed. In coming to this conclusion, we have not at all considered the question of plaintiff's negligence. The complaint was dismissed on the ground that there was no proof of negligence on the part of the defendant, and on that ground we think the judgment should be sustained. Judgment affirmed, with costs.